IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**REBECCA HUGHES,**

    **Plaintiff,**

v.                                               Civil Action no.  3:20-cv-00025

**SEVENTEENTH STREET ASSOCIATES
LLC, d/b/a HUNTINGTON HEALTH AND
REHABILITATION CENTER,**

    **Defendant.**

## COMPLAINT

Plaintiff Rebecca Hughes, by counsel Richard W. Walters, Carl W. Shaffer, and the law firm Shaffer & Shaffer, PLLC, states and alleges as follows for her Complaint against defendant Seventeenth Street Associates, d/b/a Huntington Health and Rehabilitation Center.

### PARTIES

1. Rebecca Hughes was, at all times relevant herein, a citizen and resident of Chesapeake, Ohio.

2. Seventeenth Street Associates LLC is a West Virginia limited liability company and was, at all times relevant herein, doing business as Huntington Health and Rehabilitation Center, a short- and long-term nursing and rehabilitation facility in Huntington, West Virginia.

### JURISDICTION AND VENUE

3. The Southern District of West Virginia has personal jurisdiction over this matter because Defendant is a West Virginia resident and the events forming the basis of this matter occurred in this district.

4. The Southern District of West Virginia has subject-matter jurisdiction over this matter under 28 U.S.C. § 1331 because of federal questions, and under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and there is complete diversity of citizenship.

5. Venue is proper in this court under 28 U.S.C. § 1391(b) because the events or omissions giving rise to this claim occurred in the Southern District of West Virginia.

## FACTUAL BACKGROUND

6. Plaintiff worked for Defendant for about one-and-a-half years as a licensed practical nurse.

7. On November 3, 2018, Plaintiff injured her wrist while caring for one of Defendant's patients.

8. That same day, Plaintiff's medical provider placed her on modified or light duty based on her injury to her left wrist.

9. Terms like "modified duty" and "light duty" mean that an employee is returned to work with restrictions on what she is able to do.

10. On December 5, 2018, Plaintiff's medical provider renewed Plaintiff's modified duty, directed Plaintiff not to use her left hand at all, and referred Plaintiff to an orthopedist due to worsening symptoms.

11. On December 13, 2018, Plaintiff presented to an orthopedist.

12. The orthopedist diagnosed Plaintiff with a torn tendon in her left wrist, which had led to complications like carpal tunnel and tendonitis.

13. The orthopedist decided that Plaintiff would need surgery and that Plaintiff would have to undergo six weeks of rehabilitation prior to surgery.

14. On December 13, 2018, the orthopedist continued Plaintiff's modified duty of not using her left hand at all.

15. From the date of her injury, Defendant required Plaintiff to work full-time despite being aware of her injury and modified duties.

16. On March 7, 2019, Plaintiff's orthopedist took Plaintiff off work for one month due to her left wrist.

17. Plaintiff took her orthopedist's note to Defendant the next day, and Defendant told her that there was no way she could miss work for one month and keep her job.

18. Because of Defendant's threat of termination, Plaintiff continued to work for Defendant full-time despite her orthopedist's instruction.

19. On April 8, 2019, Plaintiff's orthopedist placed her on light duty for two months with the restriction of no use of her left hand.

20. Plaintiff presented each physician's and care provider's notes to Defendant.

21. Defendant required Plaintiff to work full-time for her entire employment despite Defendant's knowledge of her injury and restrictions.

22. Plaintiff's wrist injury became worse due to Defendant forcing her to continue working full-time.

23. In the nursing world, "mandation" is the requiring of a nurse to continue working past the end of her shift due to staffing issues.

24. Defendant mandated Plaintiff on March 13, April 6, and April 20, 2019.

25. Plaintiff refused each mandate, telling Defendant she could not work past the end of her shift because of pain in her left wrist.

26. Defendant formally disciplined Plaintiff for each refused mandate.

27. On April 25, 2019, Defendant mandated Plaintiff for the fourth time, to which Plaintiff again refused, telling Defendant she could not work past the end of her shift because of pain in her left wrist.

28. Defendant was able to fill Plaintiff's mandated shift, yet still formally disciplined her for the fourth time.

29. Defendant then fired Plaintiff over the four formal disciplines for refusing mandation because of her injured left wrist.

### COUNT I—FAILURE TO ACCOMMODATE UNDER THE AMERICANS WITH DISABILITIES ACT AND THE WEST VIRGINIA HUMAN RIGHTS ACT

30. Plaintiff incorporates the preceding paragraphs by reference.

31. Plaintiff could have performed her job with Defendant if Defendant had granted her a reasonable accommodation, like light or modified duty or temporary leave.

32. Defendant knew about Plaintiff's wrist injuries at all relevant times herein.

33. Defendant refused to grant Plaintiff a reasonable accommodation such that Plaintiff could have performed the essential functions of her position as a licensed practical nurse.

34. Defendant refused even to engage Plaintiff in an interactive process to identify a reasonable accommodation.

35. Instead, Defendant forced Plaintiff to continue working full-time.

36. Plaintiff's injured wrist worsened as a result, causing her additional pain and suffering and exacerbation of her injuries.

37. Plaintiff now is having difficulty obtaining necessary medical treatment for her injured wrist.

38. Plaintiff has yet to receive the treatment recommended by her medical care providers.

39. Defendant could have reasonably accommodated Plaintiff but refused to do so.

40. Defendant failed to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq.* and the West Virginia Human Rights Act ("HRA"), W. Va. Code § 5-11-9.

### COUNT II—WRONGFUL DISCHARGE IN VIOLATION OF THE ADA AND THE HRA

41. Plaintiff incorporates the preceding paragraphs by reference.

42. Defendant fired Plaintiff because of her disabled wrist in violation of the ADA and the HRA.

### COUNT III—INTERFERENCE WITH RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT

43. Plaintiff incorporates the preceding paragraphs by reference.

44. Defendant knew that Plaintiff's injured wrist required her to undergo continuing rehabilitation, periodic visits with her orthopedist, and a medical procedure.

45. Defendant employs more than fifty employees on a continuous basis at the location where Plaintiff worked.

46. Defendant did not designate any of Plaintiff's requests for leave as falling under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

47. In fact, Defendant outright refused to allow Plaintiff any leave at all.

48. Plaintiff's injured wrist worsened as a result, causing her additional pain and suffering and exacerbation of her injuries.

49. Plaintiff now is having difficulty obtaining necessary medical treatment for her injured wrist.

50. Plaintiff has yet to receive the treatment recommended by her medical care providers.

51. Plaintiff eventually lost her job due to Defendant's refusal to grant her request for leave.

52. Defendant's actions were in violation of the FMLA.

### COUNT IV—DISCRIMINATION/RETALIATION UNDER FMLA

53. Plaintiff incorporates the preceding paragraphs by reference.

54. Plaintiff requested leave that qualified under FMLA, like her requests for rehabilitation, surgery, and intermittent leave due to pain.

55. Defendant fired Plaintiff because of her requests for leave.

56. Defendant discriminated and retaliated against Plaintiff for attempting to exercise her rights in violation of the FMLA.

### COUNT V—DISCHARGE IN CONTRAVENTION OF SUBSTANTIAL PUBLIC POLICY OF THE STATE OF WEST VIRGINIA

57. Plaintiff incorporates the preceding paragraphs by reference.

58. FMLA constitutes a substantial public policy of the State of West Virginia.

59. Defendant fired Plaintiff for her attempts to exercise rights under FMLA.

60. Defendant denied Plaintiff her rights under FMLA.

61. Defendant's conduct is in violation of substantial public policy according to *Harless v. First National Bank*, 246 S.E.2d 270 (W. Va. 1978), and its progeny.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

a. Compensatory damages, including lost wages and benefits;

b. Front pay;

c. Emotional distress and mental anguish damages;

d. Humiliation and loss of dignity damages;

e. Annoyance and inconvenience damages;

f. Attorney fees and costs;

g. Punitive damages;

h. Prejudgment and postjudgment interest on all amounts claimed; and

i. Such further relief as the Court may find appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

REBECCA HUGHES,

Plaintiff.

By Counsel:

*/s/ Richard W. Walters*
Richard W. Walters (WVSB #6809)
Carl W. Shaffer (WVSB #13260)
SHAFFER & SHAFFER, PLLC
P.O. Box 3973
Charleston, West Virginia 25339
T: 304.344.8716